[Civ. No. 6487. Third Appellate District.—January 11, 1941.]

THE PEOPLE, Appellant, v. STANDARD ACCIDENT IN-
 SURANCE COMPANY (a Corporation) et al., Respond-
 ents.

Earl Warren, Attorney-General, and R. L. Chamberlain, Deputy Attorney-General, for Appellant.

Myrick & Deering and Scott and James Walter Scott for Respondents.

THE COURT.—This action was brought to recover the sum of $9,647.40, which represented the premium paid by appellant to respondent, Standard Accident Insurance Company, upon a policy of insurance. A general demurrer to the complaint was sustained, and upon the failure of appellant to amend, judgment of dismissal was entered. The appeal is from said judgment.

The opinion of the trial judge is set forth in the clerk's transcript. After considering all the contentions made upon this appeal, we have come to the conclusion that said opinion correctly disposes of all the issues raised. We therefore adopt it as the opinion of this court. It reads as follows:

"The demurrer in this case presents primarily the question as to whether the payment of an insurance premium authorized by the legislature, 1938 Statutes, extra session, at page 99 constitutes a gift of public funds contrary to the inhibition expressed in section 31 of article IV of the State Constitution.

The parties to the action are in accord upon the proposition that there can be no liability against the state for any act insured against under the policy. The policy, however, protects the California Commission for the Golden Gate International Exposition, the Commissioners and the executive officers of the Commission from all loss from liability created by law for any damage to persons or property done by the agents, servants or employees upon premises under control and management of the Commission. Two problems are presented and discussed in the briefs, namely: 1. The existence of any possi-

ble tort liability against the Commission or its members, and 2. The right to expend public funds to insure against such liability.

The defendant contends that the members of the Commission are public officers and that as such might be liable for failure to perform ministerial duties as well as negligence in the performance of such duties and also for negligence in the selection of employees.

 Generally, a public officer is not liable in an action if he falls into error, in a case where the act to be done is not merely a ministerial one but is one in relation to which it is his duty to exercise judgment and discretion, even though an individual may suffer by his mistake, when he acts in good faith, within the scope of his authority and without malice, corruption or sinister motives. When the law trusts to the sound judgment and discretion of an officer, public policy is said to demand that he be protected from the consequences of erroneous judgment. (21 Cal. Jur. 911.) But there is a common law liability against a public officer in favor of one injured through the failure of the officer to perform a ministerial duty. (*Mock* v. *City of Santa Rosa,* 126 Cal. 330 [58 Pac. 826].)

 Although the doctrine of *respondeat superior* does not apply in the relation between the officers or officials of the state and their deputies and subordinates, a superior officer is liable for the tortious act of the subordinate if he participates in or directs the act. (*Van Vorce* v. *Thomas,* 18 Cal. App. (2d) 723 [64 Pac. (2d) 772].) The act is in contemplation of law the act of the superior. An officer may also be liable for negligence in the selection of subordinates. The Attorney-General replies that under article XXIV of the Constitution the Commission must select and employ its personnel pursuant to the State Civil Service Act which act provides for the actual selection of employees by the State Personnel Board.

The modern view adopted in this state is that public officers are not civilly liable for torts of deputies, when the latter are themselves statutory officers or not under the superior's unrestricted control or right of hiring and discharging. (*Michel* v. *Smith,* 188 Cal. 199 [205 Pac. 113]; *Van Vorce* v. *Thomas,* 18 Cal. App. (2d) 723 [64 Pac. (2d) 772]; *Union*

*Bank & Trust Co.* v. *Los Angeles County,* (Cal.)* 74 Pac. (2d) 240.) However, an officer whose appointee is selected from a restricted list and who is under civil service regulations may be liable for the acts of such appointee if he has directed such act to be done, or has otherwise personally cooperated in the doing of the act. (*Lorah* v. *Biscailuz,* 12 Cal. App. (2d) 100 [54 Pac. (2d) 1125].) Also, provision is made in the act and the rules adopted by the Personnel Board under the authority of the statute for temporary and emergency appointments under certain specified conditions.

The conclusion must be reached that there existed, during the time the policy was in force, a potential tort liability against the Commission and its members. There is sufficient in what has been here said to answer the first problem favorably to the defendant.

Defendant contends that a statute authorizing the payment of the cost of insurance against such liability does not violate the constitutional provision and cites *Heron* v. *Riley,* 209 Cal. 507 [289 Pac. 160]. There, the state had by statute waived its immunity as to negligence of its officers, agents and employees in the operation of motor vehicles within the scope of employment. The policies of insurance there concerned indemnified the state against that responsibility and were authorized by the statute. It was the statutory liability of the state thus created which was insured against. That case is not authority where as here no liability is created against the state and none exists. The cost of insuring against possible liability is a legitimate and proper governmental cost. The payment of the cost is for a public purpose and is not a donation. To pay for insurance where there is no liability is a waste of public funds; such payment is not for a public purpose, and is a donation to the insurer.

 Finally, there is to be determined whether the payment of the cost of insuring the Commission and its members against their possible tort liability is a prohibited expenditure of public revenues.

The test as stated in *City of Oakland* v. *Garrison,* 194 Cal. 298 [228 Pac. 433], is 'The primary and fundamental sub-

Reporter's Note: A rehearing was granted in the case of *Union Bank & Trust Co.* v. *Los Angeles County,* and the final opinion of the Supreme Court, adopting the prior opinion as modified, is reported in 11 Cal. (2d) 675 [81 Pac. (2d) 919].

ject of inquiry is as to whether the money is to be used for a public or a private purpose. If it is for a public purpose within the jurisdiction of the appropriating board or body, it is not, generally speaking, to be regarded as a gift'. It was there held that the improvement of a public street is a public purpose and an appropriation by a county to a city therefor is not a gift within the meaning of the constitutional inhibition. Payment of bounties for the destruction of coyotes (*Ingram* v. *Colgan,* 106 Cal. 113 [38 Pac. 315, 39 Pac. 437, 46 Am. St. Rep. 221, 28 L. R. A. 187]), payment of police pensions (*O'Dea* v. *Cook,* 176 Cal. 659 [169 Pac. 366]), payment of cost of free text books (*Macmillan Co.* v. *Clarke,* 184 Cal. 491 [194 Pac. 1030]), expenditures for a memorial hall for the use of veteran soldiers and sailors (*Allied Architects' Assn.* v. *Payne,* 192 Cal. 431 [221 Pac. 209, 30 A. L. R. 1029]), and expenditures under the Veterans' Farm and Home Purchase and Veterans' Educational Acts (*Veterans' Welfare Board* v. *Riley,* 188 Cal. 607 [206 Pac. 631], have been sustained.

It may well be argued that any decrease in the potential liability of an official will increase the willingness of competent people to assume the risk of office and an expenditure to that end is for a public purpose.

California has been placed with the minority in the application of the constitutional provision as to claims arising out of past transactions and based upon moral obligations. (*Mills* v. *Stewart,* 76 Mont. 429 [247 Pac. 332, 47 A. L. R. 424].) Attempt is made in *Veterans' Welfare Board* v. *Riley, supra,* to explain and limit this rule to such cases as *Stevenson* v. *Colgan,* 91 Cal. 649, 651 [27 Pac. 1089, 25 Am. St. Rep. 230, 14 L. R. A. 459], *Bourn* v. *Hart,* 93 Cal. 321, 327 [28 Pac. 951, 15 L. R. A. 431], and *Conlin* v. *Board of Supervisors,* 99 Cal. 17 [33 Pac. 753, 37 Am. St. Rep. 17, 21 L. R. A. 474], where the claims were made by public employees and it is there held that those cases are governed by article IV, section 32 of the Constitution, which prohibits the granting of extra compensation or allowance to a public servant after service rendered. Nevertheless such cases as *Mills* v. *Stewart, supra,* a Montana case, where a statute permitted a student injured in a dormitory at a State University through negligence of a state employee to sue the state, and *United States* v. *Realty Co.,* 163 U. S. 427 [16 Sup. Ct. 1120, 41 L. Ed. 215], where an act appropriated money to pay

bounties to persons who were prevented by the repeal of a prior act from obtaining bounties for the production of sugar before the repeal, illustrative of the application of the majority rule, have their basis in a moral obligation owed by the state and are in direct conflict with *Chapman* v. *State*, 104 Cal. 690 [38 Pac. 457, 43 Am. St. Rep. 158], and possibly *McClure* v. *Nye*, 22 Cal. App. 248 [133 Pac. 1145]. In those California cases relief of state employees for past injuries was not involved and a moral obligation was not deemed sufficient to take the cases outside of the operation of the provision in the Constitution.

Although we are not here dealing with a statute which relieves an employee from and subjects the state to an obligation, nevertheless the language of Judge Cardozo is pertinent: 'The readjustment of these burdens along the lines of equality and equity is a legitimate function of the State as long as justice to its citizens remains the chief concern.' And in considering the constitutionality of the statute the question presented is not whether it is possible to condemn it, but whether it is possible to uphold it. It is not to be declared invalid, because, incidental to the main purpose, there results an advantage to individuals. (*Patrick* v. *Riley*, 209 Cal. 350 [287 Pac. 455].) The legislature is vested with a large discretion in determining what is for the public good and what are public purposes for which public moneys can be rightfully expended and that discretion cannot be controlled by the courts, except when its action is clearly evasive. (*Daggett* v. *Colgan*, 92 Cal. 53 [28 Pac. 51, 27 Am. St. Rep. 95, 14 L. R. A. 474].)

The early decisions in this state indicate a strict construction of the constitutional provision under consideration, section 31, of article IV, due no doubt to the failure to give proper application to article IV, section 32. The latter tendency is to adopt a more liberal view as shown by the Veterans' Welfare Board case, *supra*, and such cases as *City and County of San Francisco* v. *Collins*, 216 Cal. 187 [13 Pac. (2d) 912].

I conclude that defraying the cost of insurance to protect a State officer against a potential liability as such officer is a public expenditure and not prohibited by the Constitution."

From what has been said, it follows that the trial court properly sustained the demurrer, and the judgment is therefore affirmed.

Appellant's petition for a hearing by the Supreme Court was denied March 12, 1941. Curtis, J., and Edmonds, J., voted for a hearing. Gibson, C. J., took no part in the consideration or decision of this matter.